UNITED STATES DISTRICT COURT FOR THE

WESTERN DISTRICT OF TEXAS

AUSTIN DIVISION

| | |
|---|---|
| **LABIB SULTAN**<br>Plaintiff,<br><br>**v.**<br>**Al-Iktisad Bank for Investment and Financing,** a foreign company; **Saadi Wuhaib Sihud Al Sihud,** an individual, **Ali Saadi Wuhaib Sihud**, an individual, **Hussain Saadi Wuhaib Sihud**, an individual; and **Mazin Kamil Ilias**, an individual,<br><br>Defendants. | Case No. 1:24-cv-1382<br><br><br><br><br><br>**DEMAND FOR JURY TRIAL** |

**COMPLAINT FOR FRAUD, RACKETEERING, ABUSE OF PROCESS, AND CIVIL CONSPIRACY**

Plaintiff, Dr. Labib Sultan, ("Dr. Sultan") brings this Complaint for fraud, civil conspiracy to commit fraud, abuse of process, civil violations of the Federal Racketeer Influenced and Corrupt Organizations Act (18 U.S.C. §§ 1962 and 1964(c)) ("Federal RICO") against Defendants Al-Iktisad Bank, Saadi Wuhaib Sihud Al Sihud, Ali Saadi Wuhaib Sihud, Hussain Saadi Wuhaib Sihud, and Mazin Kamil Ilias (collectively "Defendants"), and alleges as follows:

## A. FACTS

1. Dr. Sultan, a retired professor of Electrical Engineering developed solar technology to operate high pressure pumps in water treatment systems (WTS) to supply clean non-contaminated drinking water to villages and small communities in Iraq that are deprived from service by public electrical utilities operating directly from the sun energy to supply villages of up to 5,000 people with potable clean water.

2. In 2008, a cholera epidemic decimated Iraqi villages. Dr. Sultan flew to Iraq to offer his help to fight Cholera, which usually spreads through contaminated drinking water.   He presented a plan to the Ministry of Health of Iraq and the Iraqi Ministry Municipalities (IMoM) to use the solar water treatment Stations (SWTS) to fight Cholera in Iraqi villages.

3. Early in 2009, an experimental unit was shipped to Iraq and was successfully tested by IMoM. A contract to supply 325 Villages with SWTS was signed in 2009 between iMoM and Iraq Global technology (IGT), an Iraqi company set by Dr. Sultan's in Iraq as a branch of his company Solar Integrated Systems (SIS).

4. An intermediate bank is needed to provide stage financing to import the SWTS from USA and Al-Iktisad Bank (Defendant) in Iraq was the only private bank that agreed to provide such financial services. This was contingent upon the Ministry depositing the full contract amount in Al-Iktisad. IMoM agreed to this condition and it deposited the full contract amount with Al Iktisad bank in 2009. The bank would provide stage financing to IGT and would recover it from stage payments by IMoM to IGT from its deposit with the bank (a total four stages)). In 2009, IGT supplied Al-Iktisad with a blank check to authorize the use of stage financing.  The whole contract stages were successfully executed and the project was completed on time in 2010. More than 500,000 Iraqis in 325 villages in 15 provinces benefited from this project that supplied them with clean potable water using solar energy.

5. In 2011, IMoM offered a renewed contract to IGT and SIS, a new contract to use more complex SWTS to treat deep well brackish water with RO (Reverse Osmosis ) technology to

2

supply drinking water to 350 villages in Iraq. The contract was elaborated in the same manner and mechanism as the first successful contract . The bank required from IGT a new blank check to be deposited as surety for this contract claiming the previous blank check was expired and void because the first contract was completed as promsed. IGT delivered a new blank check in 2011 to Al-Iktisiad, while the previous first check stayed with Al-Iktisad bank.

6.  In 2011-2012 all contracted 350 SWTS were delivered to IMoM and the loans were paid back to the bank (70% of the contract total value of $31 million USD and $19 million or about 24 billion Iraqi dinars were released from its deposit to IGT which was automatically used to cover the money to import the SWTS). The remaining 30% went to cover the cost of implementing the 350 SWTS in Iraqi Villages. About $11.5 million USD remained with Al-Iktisad Bank to cover this cost of paying about 80 Iraqi Engineers and technicians that were trained and employed by IGT to implement the project. By 2013 about 50% of the SWTS or 170 units were installed and completed while the loan amount reached $6 million USD by 2013. The project was supposed to be completed in 5 years.

7.  In 2013, the problems started when Al-Iktisad Bank suddenly declared a bankruptcy which meant an immediate stop to IGT work to complete the project. In 2014, the bank was put under the receivership of CBI - Iraqi Central bank and with that, any hope that the bank would resume operation evaporated. Plaintiff was assured by CBI and IMOM that new ownership would take over soon and Al-Iktisad Bank would resume financing for IGT to complete the project. Plaintiff completed the project with his own financial resources.

8.  During 2013-2016 IGT and SIS used all own and available financial resources to complete 90% of the project (315 SWTS of the 350 contracted units were completed and certified by IMoM). By 2016 both companies were exhausted financially after investing all their operating capital about $3 million USD to reach 90% of the project. They needed $1 million more to complete but no financing was available. In 2016, all operations ceased.  IMoM sent several requests to the CBI receivership over the Al-Iktisad Bank to pay about $1.5 million USD to IGT, but the money was never released.

9.  In 2017 CBI transferred ownership of Al-Iktisad to a new owner, and with this enters the owners and employees of the bank, Defendants Saadi Wuhaib Sihud Al Sihud, Ali Saadi Wuhaib Sihud, Hussain Saadi Wuhaib Sihud, and Mazin Kamil Ilias.

10. In 2017, Dr. Sultan traveled to Iraq and met with the new management of Al-Iktisad Bank to secure payments to IGT. Defendants stated the bank lacked liquidity and as such no money would be released. This continued for over 7 years until Plaintiff sent a demand letter to Defendants on March 27, 2024 giving Defendants 15 days notice to resume payments to complete the projects or face a civil suit.

11. Instead of paying IGT the remaining $1.5 million owed, the new owners (and Defendants) conspired to embezzle the $1.5 million due to Plaintiff.

12. In 2021, Defendants conspired to defraud Plaintiff and acted in furtherance when they forged Plaintiff's signature and then deposited the 2009 blank surety check into an Al-Iktisad account and, of course, the check bounced. Defendants then filed a criminal complaint in an Iraqi court. In 2023, the court convicted Plaintiff in absentia for writing a hot check and sentenced him to a period of confinement. Plaintiff did not learn of this until May 2024 when he travelled to Egypt and was placed under house arrest pending extradition to Iraq. It is interesting to note that the 2009 blank surety check was endorsed in Iraq in 2021 even though Dr. Sultan last visited Iraq in 2019. This criminal act of forging checks to confiscate assets is in line with the wide practice followed by banks controlled by the pro-Iranian Militia in Iraq, of which several Defendants in this lawsuit are members or affiliates. Defndants share ties with the former prime minister of Iraq AlMaliki and with the Ahlul Haq military brigade. Their purpose is not only to criminally confiscate assets by forged checks—it is to inflict harm on public projects handled by USA companies that operated in Iraq. It is both a financial and political crime.

13. Dr. Sultan's brother, in an unrelated project provided a blank surety check to execute a small project on supplying solar pumps to the Iraqi Ministry of Irrigation. The project was

4

100% completed and despite this, Defendants forged this same 2018 surety check as if it were endorsed in 2021, which it was not. And like Dr. Sultan, Plantiff's brother was charged with writing a hot check (Art. 459 of the Iraqi Penal Code) and convicted in absentia and sentenced to one year in prison. Dr. Sultan's brother was not served with any court notice even though he resides permanently in Iraq and he is an Iraqi citizen.  On July 31, 2024, Dr. Sultan's brother died from heat stroke due to inhumane conditions in Iraqi prison with temperatures reaching 50 Celsius (122 F).

## B.  DEFENDANTS AND SUMMARY OF THEIR ROLES

14.   Below is a chart of Defendants and their roles. These roles exist as a result of the failed US invasion of the sovereign nation of Iraq and ultimately led to a shift in the nature of political, military, economic, and social organizations in the Middle East. Political turmoil created a leadership vaccuum and this allowed for Iran to gain ground across institutions in Iraq, including its banks. The militias, or mafias, succeeded in terrorizing Plaintiff and many others like him. Their goal is to attack US interests in Iraq and make money while doing it. The criminal offenses committed by, or orchestrated and directed by, Defendants include but are not limited to kidnapping, embezzlement, forgery, blackmail, fraud, and terrorism. The money illegally obtained in the instant case was diverted to finance terrorist activites against US interests in Iraq, harm subjects of the US (Plaintiff and his businesses) and influence policy.

| Defendant Name in English | Arabic Name | Role |
| --- | --- | --- |
| Al-Iktisad Bank for Investment and Financing | بنك الاقتصاد للاستثمار والتمويل | Bank controlled since 2017 by pro-Iranian mafia of the Al-Sihud family with links to the Anti-American Militia, Assaib Ahlul Haq Brigades |
| Saadi Wuhaib Sihud Al Sihud | سعدي وهيب صيهود الصيهود | Al-Iktisad Bank owner and head of the mafia that bribed Iraqi judges to charge and convict Plaintiff and his deceased brother |
| Ali Saadi Wuhaib Sihud | علي سعدي وهيب صيهود | Son of Saadi Wuhaib Sihud Al Sihud co-owner |

| | | of Al-Iktisad Bank and manager of Al-Assaib Brigade operations |
|---|---|---|
| **Hussain Saadi Wuhaib Sihud** | حسين سعدي وهيب صيهود | **Son of Saadi Wuhaib Sihud Al Sihud and Manager of Al-Assaib Brigades operations** |
| **Mazin Kamil Ilias** | مازن كامل الياس | **CEO of Al-Iktisad Bank responsible for forging checks and bribing Iraqi courts to issue convict Plaintiff in absentia, working under the directions of the three Sihud mafia members above.** |

## C.  RICO CAUSE OF ACTION

15. Defendants' actions above constitute a violation of the US RICO Act, specifically engaging in Prohibited Activities as outlined in 18 U.S. Code § 1962. A violation of Section 1962(c), requires (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496, 105 S. Ct. 3275, 3285, 87 L. Ed. 2d 346 (1985). Namely, that Defendants received income derived from a pattern of racketeering activity or through collection of an unlawful debt, in such a manner as to bolster the interest of their criminal enterprise, which affects foreign commerce. An "enterprise" is defined as including any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity. 18 U.S.C.A. § 1961(4) and *United States v. Delano*, 825 F. Supp. 534, 538-39 (W.D.N.Y. 1993), *aff'd in part, rev'd in part*, 55 F. 3d 720 (2d Cir. 1995).

16. Pursuant to 18 U.S. Code § 1964(c), Plaintiff is seeking threefold the damages sustained, the cost of the suit and reasonable attorney's fee.

## D.  JURISDICTION AND VENUE

17. This Court has jurisdiction over this cause of action as pursuant to 18 U.S.C. § 1964(c) as Defendants engaged in Prohibited Conduct under 18 U.S. Code § 1962. Venue is proper in this Court pursuant to 18 U.S. Code § 1965.

## E. DAMAGES AND PRAYER FOR RELIEF

18.  Plaintiff seeks damages for loss in the value of the contracts for the water projects descrived above in excess of $5,000,000. Plaintiff seeks punitive damages and reimbursement for costs of court. Plaintiff prays that the Court grant this and any other relief deemed just and necessary.

Respectfully submitted,

George C. Lobb, Esq.
The Law Office of George C. Lobb
T: 512-215-6011
F: 512-425-0877
Admin@Lobb.Law
2028 E Ben White Blvd
Ste 240 PMB 8990
Austin, TX 78741-6931
SBN 24042928